UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KONG PROPERTIES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:19-CV-2472-G |
| CERTAIN UNDERWRITERS AT | ) | |
| LLOYD'S LONDON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the plaintiff's motion for partial summary judgment

(docket entry 23) and the defendants' verified plea in abatement (docket entry 1-7).

For the reasons set forth below, the plaintiff's motion for partial summary judgment

is **GRANTED** and the defendants' verified plea in abatement is **DENIED**.

I. BACKGROUND

A. Factual Background

This case arises from a wind and hail storm that damaged the roofs of several

buildings owned by the plaintiff.

The following facts are undisputed unless otherwise indicated.

The plaintiff Kong Properties, Ltd. ("Kong") purchased a commercial insurance policy from the defendants certain underwriters at Lloyd's London ("the Underwriters") to cover property losses to Kong's four buildings located at 4001-4041 Wheatland Road, Dallas, Texas, 75237 ("the property"). Plaintiff's Brief in Support of Its Motion for Partial Summary Judgment ("Motion") (docket entry 24) at 2; Brief in Support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Response") (docket entry 26) at 2. The insurance policy ("the policy") provided coverage for the period between November 1, 2016 and November 1, 2017. Motion at 2.

On or about May 2, 2017, during the period of coverage under the policy, a hail and wind storm caused damage to the property. *Id.* Kong reported the damage to the Underwriters and their agents, who assigned claim number EW0004816AS to Kong's loss claim. *Id.* at 2-3. Kong and the Underwriters each hired a loss adjuster to assist in the adjustment of Kong's insurance claim: Kong retained Jason Lanier ("Lanier") and the Underwriters retained Gordon P. Welch ("Welch"). *Id.* at 3.

During the adjustment period, a third party (J.S. Held) prepared an estimate of the damage to the four buildings at the property, which totaled $1,005,318.49. Response at 2-3. This estimate included $307,376.88 for code upgrades, and an agreed depreciation amount of $160,526.67. *See* Motion at 3; Defendants' Response at 3.

- 2 -

The parties agreed with the J.S. Held estimate.  On July 24, 2018, Welch sent an email to Lanier stating that the defendants agreed with Lanier's request for a "gross loss settlement [of] $1,005,318.49."  Motion, Exhibit B-1 (docket entry 24-3).  Welch's email further stated:  "Upon completion and confirmation of the repairs the applicable recoverable depreciation and code payments will be issued."  *Id.*  Welch's email concluded as follows: "Please complete the attached Proof of Loss and return it . . . .  Upon receipt of the properly executed [Proof of Loss] we will forward to the market for payment."  *Id.*

On July 25, 2018, the plaintiff executed and signed a document titled "SWORN STATEMENT in PROOF OF LOSS" ("the proof of loss").  Motion, Exhibit B-2 (docket entry 24-4).  The plaintiff asserts that it submitted the proof of loss to the defendants on July 27, 2018.  Motion at 6.

In an email on November 1, 2018, Lanier notified the defendants and Welch that repairs to the property had been completed.  Defendants' Response at 3.  Attached to Lanier's November 1, 2018 email was a final invoice from the contractor who had conducted the repairs.  Motion at 3.  Later that day, Welch responded to Lanier's email, stating: "We will need to do an inspection to confirm completed repairs."  Motion, Exhibit B-3 (docket entry 24-5).

On December 12, 2018, Welch conducted an inspection of the property.  *See* Response at 3; Motion at 3.  The Underwriters assert that during this inspection, the

- 3 -

roof on one of the buildings on the property "exhibited conditions that called into question whether it had been completely replaced or simply repaired."  Response at 3.  The Underwriters's response contains photographs that the Underwriters assert were taken during the December 12, 2018 inspection, which depict two seals that are inlaid in the roof material of the building in question and are dated January through April 2017.  *Id.* at 3-4.  The day after the inspection, December 13, 2018, Welch confirmed that he had inspected Kong's property with Kong's contractor, Charles Goss ("Goss").  Motion at 3.

On February 12, 2019, Lanier sent an email to Welch requesting an update on payment of the unpaid balance of the claim.  *Id.* at 3-4.  On February 15, 2019, Lanier sent another email to Welch.  Attached to the February 15 email were "cancelled checks paid to [the p]laintiff's contractor [*i.e.* Goss], a green tag from the local code enforcement office showing completion, and a final end user invoice for the agreed replacement cost value."  *Id.* at 4.

On March 14, 2019, Welch emailed Goss asking if Goss had "received all the funds for the repairs" to Kong's roofs, and if not, what amount Goss was still owed.  Notice of Removal, Exhibit A-6 ("Verified Plea in Abatement") (docket entry 1-7) at 19.[1]  In this email, Welch also sought to obtain core samples of the roofs of the

---

[1]      Citations to the Underwriters's verified plea in abatement refer to the page number at the top of the page.

- 4 -

buildings located at the property so as to determine whether certain code upgrades and repairs had been made to the roofs. *Id.*; Response at 4.

On March 25, 2019, Lanier sent an email to Welch requesting that Welch refrain from communicating about Kong's insurance claim with anyone other than Kong and Lanier. *See* Response at 4; Notice of Removal, Exhibit A-6 at 18. Lanier also stated: "If . . . you still insist on cutting holes in [Kong's] brand new roofing system, [Kong] has agreed to allow cores to be taken but does so under protest and believes it is both unreasonable and unnecessary[.]" Notice of Removal, Exhibit A-6 at 18-19. To date, however, Kong has not allowed the Underwriters to take core samples from the roofs of the buildings located at the property. Response at 5.

### B. Procedural Background

Kong initiated this action by filing its original petition in a Texas state court on August 13, 2019. Notice of Removal at 2. In its original petition, Kong asserts the following five claims: (1) breach of contract, (2) violation of Chapter 542 of the Texas Insurance Code, (3) violation of various provisions of the Texas Deceptive Trade Practices Consumer Protection Act, (4) unfair insurance practices, in violation of Chapter 541 of the Texas Insurance Code, and (5) breach of the duty of good faith and fair dealing. Notice of Removal, Exhibit A-2 ("Original Petition") at 8-11.

On October 17, 2019, the Underwriters filed an answer to the plaintiff's original petition and a verified plea in abatement. Verified Plea in Abatement. On

October 18, 2019, the Underwriters removed the case to this court on the basis of diversity jurisdiction.  *See* Notice of Removal (docket entry 1).  Sometime thereafter, Kong filed a verified response to the Underwriters' plea in abatement on the state court's docket.  Kong then filed a motion to supplement this court's docket with the response that Kong had previously filed in state court (docket entry 15), which this court granted (docket entry 17).

On December 18, 2019 Kong filed its response to the plea in abatement on this court's docket.  *See* Plaintiff's Verified Response to Defendant's Plea in Abatement ("Plaintiff's Original Response") (docket entry 18).  On December 20, 2019 Kong filed a supplemental response to the plea in abatement.   Plaintiff's Supplemental Response to Plea in Abatement ("Plaintiff's Supplemental Response") (docket entry 19).  On January 3, 2020 the Underwriters filed a reply in support of their plea in abatement.  Defendants' Reply to Plaintiff's Response to Defendants' Verified Plea in Abatement ("Defendants' Reply") (docket entry 20).  On May 13, 2020, the court granted Kong leave to file a sur-reply in opposition to the plea in abatement, which Kong filed on May 20, 2020.  *See* Plaintiff's Surreply to Defendant's Plea in Abatement ("Plaintiff's Surreply") (docket entry 30).  The Underwriters' plea in abatement is therefore fully briefed and ripe for determination.

On February 5, 2020, Kong filed its motion for partial summary judgment, seeking summary judgment only on its breach of contract claim.  Motion at 5-6.  On

February 25, 2020, the Underwriters filed their response to Kong's motion. Defendants' Response.  On March 10, 2020, Kong filed a reply in support of its motion.  Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment ("Plaintiff's Reply") (docket entry 27).  Kong's motion for partial summary judgment is therefore fully briefed and ripe for determination.

## II.   APPLICATION

The court considers Kong's motion for partial summary judgment before turning to the Underwriters's verified plea in abatement.

### A.   Kong's Motion for Partial Summary Judgment

#### 1.   *Summary Judgment Legal Standard*

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[2]    Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

2.  *Analysis*

Kong's motion for summary judgment pertains only to Kong's claim for breach of contract.  Under Texas law, there are four essential elements to a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).  "Generally, under Texas law, a contract of insurance is subject to the same rules of construction as other contracts."  *Crenshaw v. State Farm Lloyds*, 425 F. Supp. 3d 729, 733 (N.D. Tex. 2019) (O'Connor, J.) (citing *Barnett v. Aetna Life Insurance Co.*, 723 S.W.2d 663, 665 (Tex. 1987)).  Courts interpret contracts holistically to give effect to each provision; however, "[i]f an insurance contract is ambiguous . . ., a court construes the contract in favor of the insured."  *See id.* (citations omitted).

Here, the existence of a valid contract between the parties is not in dispute.

Kong claims that the Underwriters breached the contract between the parties by failing to pay Kong the entire agreed loss amount, $1,005,318.49, within thirty days of receiving Kong's sworn proof of loss.  Specifically, Kong maintains that the Underwriters breached the contract by failing to pay the agreed code upgrade amount of $307,376.88 and the agreed depreciation amount of $160,526.67.  The Underwriters argue that no breach has occurred because, in their view, Kong is

required to complete all of the repairs contemplated in the parties' agreed loss valuation before withheld depreciation and code upgrade payments become due under the policy.  Kong rejoins that under the contract, completion of repairs is not a condition precedent to the Underwriters's obligation to pay the full amount of the agreed loss valuation, and in any event, that Kong has in fact completed all of the repairs contemplated in the parties' agreed loss valuation.

To determine the parties' rights and obligations under the contract, the court looks to the terms of the contract.

a. *The Relevant Terms of the Contract*

The insurance contract at issue in this case is approximately 76 pages long.  *See* Motion, Exhibit A ("The Contract") (docket entry 24-1).[3]  In their summary judgment briefs, the parties cite only two provisions of the contract.  One is a clause titled "VALUATION" ("the valuation clause").  The valuation clause reads, in pertinent part:

> Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss, and for no more than the interest of the Insured, subject to the following:
>
> * * *
>
> I.   On all other property, the loss amount will not exceed the lesser of the following:

---

[3]   Citations to the contract refer to the page numbers at the top of the page.

1. All with due diligence and dispatch

   (a)  The cost to repair

   (b)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality

                * * *

5. The Actual Cash Value if such property is:

   (a) useless to the Insured; or

   (b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the insured real and/or personal property lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within 2 (two) years from the date of loss.  As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at an Insured Location under this Policy.  This item does not extend to Demolition And Increased Cost Of Construction.

The term Actual Cash Value wherever used in this Policy means the amount it would cost to repair or replace Insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

Response at 9-10 (citing The Contract at 57-59).

- 11 -

The other provision of the contract to which the parties cite is a clause titled

"SETTLEMENT OF CLAIMS" ("the settlement clause").  The settlement clause

reads, in pertinent part:

> The amount of loss, except for Accounts Receivable coverage, for which the Underwriters may be liable will be paid within 30 (thirty) days after:
>
> > A.  proof of loss as described in this Policy is received by the Underwriters; and
> >
> > B.  when a resolution of the amount of loss is made either by:
> >
> > > 1.  written agreement between the Insured and the Underwriters . . . .

Reply at 2 (citing The Contract at 61).

Kong asserts that under the settlement clause, there are two conditions

precedent to the Underwriters' obligation to pay Kong for a covered loss: (1) the

Underwriters must receive a proof of loss, as described in the policy, from Kong, and

(2) Kong and the Underwriters must resolve the amount of loss by written

agreement.  Upon completion of these two actions, Kong maintains, the contract

requires the Underwriters to tender the amount of loss for which they may be liable

to Kong within 30 days.

The Underwriters assert that there is a third condition precedent to their

obligation to pay Kong for withheld depreciation and code upgrades: Kong must

actually complete the repairs contemplated in the loss valuation before withheld

depreciation and code upgrade payments become due.  Under the Underwriters's reading of the contract, the valuation clause "limits payment to no more than the actual cash value until the repairs are completed and in excess of the actual cash value payment."  Response at 10.

Having carefully considered the parties' arguments concerning the terms of the contract and the authorities cited in the parties' briefs, the court concludes that completion of repairs by Kong is not a condition precedent to the Underwriters' obligation to pay the full amount of the agreed loss.

The Underwriters's arguments to the contrary are unpersuasive.  First, the Underwriters argue: "Under the terms of the [p]olicy, withheld depreciation or code upgrades are not payable if the costs were not incurred or the code upgrades were not performed."  Response at 9.  In support of this argument, the Underwriters rely on *Greenspoint Investors, Ltd. v. Travelers Lloyds Insurance Company*, No. CIV.A. H-10-4057, 2015 WL 965730 (S.D. Tex. Mar. 3, 2015).  *Greenspoint*, however, is inapposite; the Underwriters point to no provision of the contract at issue in *Greenspoint* that is remotely similar to the settlement clause of the contract at issue here.

Similarly, the Underwriters' argument that the "Underwriters are obligated to pay what [Kong] *actually spent* on covered repairs to the roof," Response at 10 (emphasis in original), is unavailing.  In support of that argument, the Underwriters

- 13 -

cite four cases: (1) *Central Mutual Insurance Company v. White Stone Properties, Ltd.*;[4]

(2) *Devonshire Real Estate & Asset Management, LP v. American Insurance Company*;[5] (3)

*Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*;[6] and (4) *Triyar Companies, LLC*

*v. Fireman's Fund Insurance Company*.[7]  Like the present case, each of these four cases

involved a claim for breach of an insurance contract under Texas law.  Unlike the

present case, however, the contracts at issue in the four cases cited by the

Underwriters each contained language that "require[d] repair or replacement of the

destroyed property *before* the insured [became] entitled to recover replacement cost

damages."  See, e.g., *Fitzhugh*, 261 S.W.3d at 863 (emphasis added); *id.* at 862

(contract stated: "Replacement cost valuation does not apply *until* the damaged or

destroyed property is repaired or replaced") (emphasis added); *Devonshire*,  2014 WL

4796967, at *5 (contract stated: "[the insurance provider] will not pay on a

replacement cost basis for any loss or damage . . . *Until* the lost or damaged property

is actually repaired or replaced") (emphasis added); *White Stone*, 2014 WL 1092121

at *6 (same); *Triyar*, 515 S.W.3d at 523 (same).  The bottom line is that the

contract between Kong and the Underwriters, unlike some insurance policies, does

---

[4]    No. A-12-CA-275-SS, 2014 WL 1092121 (W.D. Tex. Mar. 19, 2014),
*aff'd*, 596 F. App'x 333 (5th Cir. 2015).
[5]    No. 3:12-CV-2199-B, 2014 WL 4796967 (N.D. Tex. Sep. 26, 2014)
(Boyle, J.).
[6]    261 S.W.3d 861 (Tex. App.—Dallas 2008, pet. denied).
[7]    515 S.W.3d 517 (Tex. App.— Houston [14th Dist.] 2017, pet. denied).

not contain a provision that allows the Underwriters to withhold the agreed loss amount "until the lost or damaged property is actually repaired or replaced," and the court declines to read such a provision into the contract.  See *Gideon v. State Farm Lloyds*, No. 4:17-CV-00643-O-BP, 2019 WL 4930161, at \*5 (N.D. Tex. July 1, 2019) (Ray, M.J.) (quoting *American Manufacturers Mutual Insurance Company v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003)) ("A court may not 'rewrite the parties' contract nor add to its language.'").[8]

b.  *Whether the Underwriters Breached the Contract*

Having examined the terms of the parties' insurance contract, the court concludes that the Underwriters breached the contract by failing to pay Kong the full agreed loss amount of $1,005,318.49 within thirty days of receiving Kong's sworn proof of loss.  As detailed above, the settlement clause dictates that "[t]he amount of loss . . . for which the Underwriters may be liable will be paid within 30 (thirty) days

---

[8]     The court notes that the valuation clause's statement that the insured may not recover for loss above the actual cash value of damaged property if such property is "not repaired, replaced or rebuilt on the same or another site within two years from the date of loss" imbues the contract with a degree of ambiguity.  The Underwriters raise a colorable argument that the valuation clause lets the Underwriters off the hook for loss above the actual cash value *until* Kong repairs, replaces, or rebuilds its damaged property.  The plain language of the settlement clause, however, dictates that actual completion of repairs is not among the conditions precedent to the Underwriters' contractual obligation to pay Kong the amount of the agreed loss valuation.  Furthermore, to the extent that inconsistencies between the valuation clause and settlement clause create ambiguities in the contract, the "court construes the contract in favor of the insured."  See *Crenshaw*, 425 F. Supp. 3d at 733 (citations omitted).

after: [(1)] proof of loss as described in this Policy is received by the Underwriters; and [(2)] . . . a resolution of the amount of loss is made . . . by . . . written agreement between the Insured and the Underwriters[.]"  The Contract at 61.

Kong maintains that the parties made a resolution of the amount of loss by "written agreement" on July 24, 2018 when Welch emailed Lanier stating that the defendants agreed with Lanier's request for a "gross loss settlement [of] $1,005,318.49," and that Kong submitted a sworn proof of loss to the Underwriters on July 27, 2018.  The Underwriters do not dispute either point.  The court therefore concludes that the Underwriters breached the contract when they failed to pay Kong the agreed loss amount within thirty days of receiving Kong's sworn proof of loss on July 27, 2018.

Accordingly, the court grants summary judgment in favor of Kong with respect to the issue of whether the Underwriters breached the contract.  Because completion of repairs is not a condition precedent to the Underwriters's obligation to pay Kong the amount of loss to which the parties agreed, the court need not consider at this juncture whether Kong has in fact fully repaired the roofs on its buildings.

## B.  The Underwriters's Verified Plea in Abatement

The court now turns to the Underwriters's verified plea in abatement. The Underwriters request that the court abate this case under Section 542A of the Texas Insurance Code.  Section 542A.005 of the code provides that

- 16 -

a person against whom an action to which this chapter applies is pending may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the action is pending if the person:

(1) did not receive a presuit notice complying with Section 542A.003; or

(2) requested under Section 542A.004 but was not provided a reasonable opportunity to inspect, photograph, or evaluate the property that is the subject of the claim.

Tex. Ins. Code Ann. § 542A.005.[9]   The presuit notice contemplated in Section 542A.003 must include "the amount of reasonable and necessary attorney's fees incurred by the claimant, calculated by multiplying the number of hours actually worked by the claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services." *Id.* § 542A.003(b)(3).

Section 542A.004 provides an insurer with the right to inspect insured property as follows:

Not later than the 30th day after receiving a presuit notice given under Section 542A.003(a), a person to whom notice is given may send a written request to the claimant to inspect, photograph, or evaluate, in a reasonable manner and at a reasonable time, the property that is the subject of the claim.

*Id.* § 542A.004.

_____

[9]   All citations to code sections contained herein refer to the Texas Insurance Code.

Finally, section 542A.005 further states:

> (b) The court shall abate the action if the court finds that the person filing the plea in abatement:
>
> (1) did not, for any reason, receive a presuit notice complying with Section 542A.003; or
>
> (2) requested under Section 542A.004 but was not provided a reasonable opportunity to inspect, photograph, or evaluate the property that is the subject of the claim.

*Id.* § 542A.005.

Here, it is undisputed that Kong timely provided the Underwriters with a presuit notice before filing this lawsuit. The Underwriters argue, however, that the court should abate this case because: (1) Kong's presuit notice did not adequately specify the plaintiff's reasonable and necessary attorney's fees, as required by Section 542A.003(b)(3); and (2) Kong did not afford the Underwriters a reasonable opportunity to inspect the property that is the subject of the plaintiff's claim, as required by Section 542A.004. The court finds neither argument persuasive.

First, the court concludes that the presuit notice that Kong sent to the Underwriters adequately specified the attorney's fees that Kong had incurred to date. The notice, dated June 13, 2019, states:

> Kong has incurred reasonable attorney's fees with our law firm under a contingent fee contract. On an hourly basis, Kong has incurred $9,000 in reasonable and necessary attorneys' fees to date in asserting this claim. This amount consists of twenty hours of Mr. Fields [*sic.*] time at $200 per

> hour and ten hours of Mr. Loree's time at a rate of $500 per
> hour.

Plaintiff's Original Response, Exhibit A at 4-5.  The Underwriters cite no authority in

support of their assertion that Kong's specification of attorney's fees fails to satisfy

§ 542A.003(b)(3).

Second, the court concludes that Kong afforded the Underwriters a

"reasonable opportunity to inspect, photograph, [and] evaluate the property" that is

the subject of this lawsuit.  Before this suit was filed, the Underwriters were

permitted to conduct at least two inspections of the subject property, as evidenced by

photographs depicted in the defendants' plea in abatement which are dated

December 12, 2018, and February 11, 2019.  *See* Verified Plea in Abatement at 2-3.

Furthermore, on August 1, 2019, after Kong sent its presuit notice to the

Underwriters and the Underwriters requested to inspect the property again, Kong

sent a letter to the Underwriters's counsel stating: "Kong will allow Underwriters

another inspection of the property to view and photograph it, but will not allow any

destructive testing."  Plaintiff's Original Response, Exhibit B at 2.

The Underwriters argue that they were not afforded a reasonable opportunity

to inspect the property because Kong denied their request to conduct core sampling

of the roofs of Kong's buildings.  Verified Plea in Abatement at 7.  The Underwriters

cite no authority, however, to support the assertion that the right to a "reasonable

opportunity to inspect, photograph, [and] evaluate" property includes the right to

- 19 -

cut into Kong's roofs to extract core samples.  Furthermore, on the facts before the court and in light of the court's conclusion that completion of repairs is not a precondition to payment under the contract at issue in this case, the court concludes that Kong's August 13, 2019 offer for the Underwriters's to enter onto Kong's property to inspect and photograph Kong's roofs constitutes a "reasonable opportunity" to inspect the property in a "reasonable manner" under sections 542A.0054 and 542A.005 of the Texas Insurance Code.  Accordingly, the Underwriters's verified plea in abatement is denied.

### III.  CONCLUSION

In accordance with the foregoing, the plaintiff's motion for partial summary judgment is **GRANTED**, and the defendants' verified plea in abatement is **DENIED**.

**SO ORDERED**.

July 7, 2020.

A. JOE FISH
Senior United States District Judge

- 20 -